IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| QUINT L. EVANS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 120-153 |
| | ) | |
| SHERIFF RICHARD ROUNDTREE; | ) | |
| WARDEN CHARLES SAMUELS; and | ) | |
| CHARLES B. WEBSTER DETENTION | ) | |
| CENTER, | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, detained at the at the Charles B. Webster Detention Center (the Detention Center) in Augusta, Georgia, submitted a "Form to be Used by Prisoners in Filing a Complaint under the Civil Rights Act, 42 U.S.C. § 1983" and sought to proceed *in forma pauperis* ("IFP"). (Doc. nos. 1, 2.)  However, upon review of Plaintiff's initial filings, it was unclear whether he was attempting to assert a claim pursuant to 42 U.S.C. § 1983 or attempting to petition for habeas corpus relief pursuant to 28 U.S.C. § 2241.  Accordingly, the Court directed Plaintiff provide notification of his intention to proceed with a § 1983 complaint or a § 2241 habeas corpus petition.  (Doc. no. 3.)  In response, Plaintiff notified the Court he intended to pursue a § 1983 case, submitted an amended complaint, and returned the necessary paperwork to proceed IFP.  (Doc. nos. 4, 5, 7-8.)  Because Plaintiff is proceeding IFP, his amended complaint must be screened to protect potential defendants.

Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (*per curiam*); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

## I.     SCREENING THE AMENDED COMPLAINT

### A.     BACKGROUND

As the Court explained in the Order directing Plaintiff to clarify the type of case he wanted to pursue, (doc. no. 3), "a prisoner in state custody cannot use a § 1983 action to challenge 'the fact or duration of his confinement' . . . .  He must seek federal habeas corpus relief (or appropriate state relief) instead."   Wilkinson v. Dotson, 544 U.S. 74, 78 (2005). The Court further recognized Plaintiff had filed three applications for federal habeas corpus relief in approximately one year,[1] and simply putting habeas corpus claims on a § 1983 complaint form would not prevent the Court from analyzing the substance of his claims.  (Doc. no. 3, p. 2.) As explained below, the crux of Plaintiff's current case again sounds in habeas corpus and amounts to a fourth request for his immediate release from confinement.

Plaintiff names the following Defendants:  (1) Sheriff Richard Roundtree; (2) Charles Samuels, Warden of the Detention Center; and (3) the Detention Center.  (Doc. no. 5, pp. 1-3.) Taking all of Plaintiff's allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

Plaintiff was arrested on August 29, 2018, and arrived at the Detention Center on September 6, 2018.  (Id. at 6.)  Unnamed officials working for Sheriff Roundtree failed to present warrants on the day Plaintiff was arrested, resulting in an unreasonable search and

---

[1]Evans v. Roundtree, CV 120-061, doc. nos. 5, 8 (S.D. Ga. June 19, 2020); Evans v. Roundtree, CV 119-221, doc. nos. 10, 11 (S.D. Ga. Feb. 14, 2020); Evans v. Roundtree, CV 119-091, doc. nos. 11, 12 (S.D. Ga. Aug. 26, 2019).

seizure of Plaintiff and his personal belongings.  (Id. at 8.)  Plaintiff was indicted on December 4, 2018, but the charges are invalid because the procedures followed by the grand jury were improper.  (Id. at 8-9.)  Plaintiff was granted a partial bond in May 2019, but he believes the $155,000 bond is excessive.  (Id. at 10.)  Plaintiff filed a state habeas corpus petition on May 24, 2019, but he has not received a ruling from the state court.  (Id. at 7-8.)  After twenty-eight months in detention without a trial, during which he has received medication for depression and anxiety, Plaintiff seeks his immediate release and dismissal with prejudice of all charges.  (Id. at 11.)  He explicitly disavows seeking any monetary relief.  (Id.)

### B.   DISCUSSION

#### 1.   Legal Standard for Screening

The amended complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief.  See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989).  "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)."  Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (per curiam) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the amended complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the amended complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*); Haines v. Kerner, 404 U.S. 519, 520 (1972) (*per curiam*). However, this liberal construction does not mean that the Court has a duty to re-write the complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

## 2.    Plaintiff Cannot Use a § 1983 Case to Obtain Habeas Corpus Relief

"Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus, Preiser v. Rodriguez, 411 U.S. 475, 500, 93 S. Ct. 1827, 36 L.Ed.2d 439 (1973); requests for relief turning on circumstances of confinement may be presented in a § 1983 action." Muhammad v. Close, 540 U.S. 749, 750 (2004) (*per curiam*); see also Siskos v. Sec'y, Dep't of Corr., 817 F. App'x 760, 764 (11th Cir. 2020) (*per curiam*) (same). Plaintiff is undoubtedly familiar with habeas corpus procedure, as he has previously

4

filed three, § 2241 petitions which have been dismissed.  See note 1, *supra*.  As explained in the most recently dismissed § 2241 case, Plaintiff has not exhausted state court remedies, and this Court should not interfere, pursuant to Younger v. Harris, 401 U.S. 37 (1971), in Plaintiff's ongoing state prosecution, wherein he is represented by the Public Defender's Office.[2]  See CV 120-061, doc. nos. 5, 8.  That analysis has not changed.

<b>a.      Plaintiff Has Not Exhausted State Court Remedies</b>

Publicly available records show Plaintiff was placed on first offender probation on May 12, 2017, for a charge of cruelty to children in the first degree.  State v. Evans, Case No. 2017RCCR00066 (Richmond Cnty. Sup. Ct. May 12, 2017), *available at* https://coc.augustaga.gov (follow "Criminal Search" hyperlink; then search "Evans, Quinton" last visited Jan. 28, 2021) (hereinafter first offender case, Attach. 1).  On August 24, 2018, a warrant issued in the first offender case based on activity which became the basis for a new indictment dated December 4, 2018.  (Attach. 1.)  The new case charged Plaintiff with criminal attempt to commit a felony, aggravated assault, false imprisonment, and three charges of child molestation.  State v. Evans, Case No. 2018RCCR01554 (Richmond Cnty. Sup. Ct. Dec. 4, 2018), *available at* https://coc.augustaga.gov (follow "Criminal Search" hyperlink; then search "Evans, Quint" last visited Jan. 28, 2021) (hereinafter pending 2018 criminal case, Attach. 2).  A petition for modification/revocation of probation was filed in the first offender case on February 6, 2019.  (Attach. 1.)  The pending 2018 criminal case, in

---

[2]The  Court may take judicial notice of another court's records to establish existence of ongoing litigation and related filings, as well as of its own records,  See United States v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994); United States v. Rey, 811 F.2d 1453, 1457 n.5 (11th Cir. 1987).

which Plaintiff is represented by the Public Defender's Office, has appeared on the jury trial calendar eleven times, most recently scheduled for May 11, 2020.[3]   (Attach. 2.)   On December 30, 2020, the trial court entered an order regarding admissible evidence.  (Id.)

Plaintiff filed a *pro se* state habeas corpus petition on May 24, 2019 against Sheriff Roundtree and the Detention Center.  Evans v. Roundtree,  Case No. 2019RCHM00015 (Richmond Cnty. Sup. Ct. May 24, 2019), *available at* https://coc.augustaga.gov (follow "Civil Search" hyperlink; then search "Evans, Quint" last visited Jan. 28, 2021, Attach. 3). An answer was filed on June 24, 2019.  (Attach. 3.)  The docket reflects Plaintiff has moved to dismiss and quash the indictment for his pending 2018 criminal case and has written several letters to the state habeas court.  (See id.)  On November 8, 2019, a response issued to Plaintiff's correspondence, but there does not appear to be any official court rulings on the state habeas petition or the motions filed therein.  (Attach. 3.)

Moreover, on March 14, 2020, the Honorable Harold D. Melton, Chief Justice of the Supreme Court of Georgia, issued an Order Declaring Statewide Judicial Emergency pursuant to O.C.G.A.  § 38-3-61 because of the COVID-19 pandemic. Order *available at* https://gasupreme.us (follow hyperlink for Statewide Judicial Emergency, Original Order, last visited Jan. 28, 2021).  That original Order has been extended ten times, and the Statewide Judicial Emergency currently extends through February 7, 2021.  Id. (follow hyperlink for Statewide Judicial Emergency, Tenth Extension Order, last visited Jan. 28, 2021, Attach. 4).

---

[3]Based on the chronology of the case and comparison with the docket as it was attached in the first federal petition, it appears the jury trial notice dated January 13, 2019, may have been mistakenly put on the docket when attempting to notice the trial for January 13, 2020.  Cf. Attach. 2 with CV 119-091, doc. no. 8, Attach. 2.

As part of the Statewide Judicial Emergency, all statutory deadlines based on indictments and jury trials are suspended and tolled.  (Attach. 4, p. 3.)

Not only has Plaintiff improperly attempted to pursue habeas corpus relief through a §1983 complaint, but even if he had filed a fourth federal habeas corpus petition, it would be subject to dismissal because Plaintiff has not exhausted state court remedies.  Although there is no exhaustion requirement in the language of 28 U.S.C. § 2241(c)(3), federal courts do not exercise jurisdiction under § 2241 if the issues raised might be resolved by trial on the merits or other available state procedures.  Santiago-Lugo v. Warden, 785 F.3d 467, 475 (11th Cir. 2015) (explaining exhaustion requirement in § 2241 case); Hughes v. Att'y Gen. of Fla., 377 F.3d 1258, 1262 n.4 (11th Cir. 2004) (noting applicability of exhaustion requirement to § 2241 petition challenging pretrial detention).  "The exhaustion doctrine of § 2241(c)(3) was judicially crafted on federalism grounds to protect the state courts' opportunity to confront and resolve initially any constitutional issues arising within their jurisdiction and also to limit federal interference in the state adjudicatory process."  Turner v. Morgan, No. 3:12cv188/MCR/CJK, 2012 WL 2003835, at *2 (N.D. Fla. Apr. 25, 2012), adopted by, 2012 WL 2003452 (N.D. Fla. June 4, 2012) (citation omitted).  Put differently, the exhaustion doctrine prevents "pretrial habeas interference by federal courts in the normal functioning of a state's criminal processes, absent a petitioner's exhaustion of his state court remedies."  Id. (citing Braden v. 30th Judicial Cir. Ct. of Ky., 410 U.S. 484, 493 (1973)).

Nothing in Plaintiff's filings suggests he has been prevented from asserting his current claims in his state court proceedings.  Indeed, Plaintiff has a pending state habeas corpus petition.  (See Attach. 3.)  Georgia case law is clear that, subject to various state procedural requirements,

the state habeas courts are available for Plaintiff to raise claims concerning the validity of his indictment.  See Henderson v. Hames, 697 S.E.2d 798, 801-03 (Ga. 2010); see also O.C.G.A. § 9-14-48(d) (describing procedural requirements for consideration of state habeas claims and setting out cause and prejudice, as well as miscarriage of justice, exceptions).  State habeas proceedings are also available to challenge the denial or terms of bond.  See Mullinax v. State, 515 S.E.2d 839, 839-40 (Ga. 1999).  Moreover, to the extent Plaintiff complains he has not received a ruling on his pending state habeas petition, the complaint does not show he has exhausted state court remedies by pursuing mandamus relief to compel a ruling.  See Jackson v. Walker, 206 F. App'x 967, 969 (11th Cir. 2006) (per curiam) (recognizing availability of mandamus to compel habeas ruling and requiring such to satisfy federal exhaustion requirement); Smith v. Baden, No. CV 411-240, 2011 WL 5528106, at *1 (S.D. Ga. Oct. 26, 2011), adopted by, 2011 WL 5527792 (S.D. Ga. Nov. 14, 2011) (same); Rickett v. State, 581 S.E.2d 32, 33 (Ga. 2003) (recognizing applicability of mandamus to Georgia habeas proceedings).

Finally, although it does appear there has been some delay in the progress of Plaintiff's cases, given the unusual circumstances of the COVID-19 pandemic and the Statewide Judicial Emergency in effect, the Court finds no reason to disregard the exhaustion requirement.  Indeed, in the United States alone, as of January 28, 2021, COVID-19 has infected more than 25,456,670 people, killed 427,626 people, and continues its rapid acceleration of infection rates.   COVID Data Tracker, CENTER FOR DISEASE CONTROL AND PREVENTION, https://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days (last visited Jan. 28, 2021).  There can be no doubt that "[t]he COVID-19 global pandemic places persons' health

at substantial risk when they gather in groups in relatively close proximity to one another, particularly indoors where persons are talking.  A jury trial includes all of these risks for the trial participants."  United States v. Crittenden, No. 4:20-CR-7 (CDL), 2020 WL 5223303, at *3 (M.D. Ga. Sept. 1, 2020).  In sum, Plaintiff's immediate release from detention and dismissal of all charges with prejudice is simply not available to Plaintiff in these proceedings.

### b.    Younger Abstention

Even if Plaintiff were permitted to seek release from detention and dismissal of charges, the Court should not interfere with Plaintiff's ongoing state prosecution.   The Supreme Court has repeatedly ruled that "absent extraordinary circumstances federal courts should not enjoin pending state criminal prosecutions."   New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 364 (1989) (citing Younger v. Harris, 401 U.S. 37 (1971)).  There are three exceptions to this rule that warrant federal court intervention:  "(1) there is evidence of state proceedings motivated by bad faith, (2) irreparable injury would occur, or (3) there is no adequate alternative state forum where the constitutional issues can be raised."  Turner, 2012 WL 2003835, at *2 (citing Younger, 401 U.S. at 45).

None of the three exceptions to the Younger doctrine apply to Plaintiff's case. Although Plaintiff claims he is the victim of bad faith prosecution in the form of alleged irregularities with the manner in which he was indicted, he fails to make "substantial allegations" with evidentiary support for his claims.  See Younger, 401 U.S. at 48-49 (noting allegations in previously decided case granting injunction were "substantial" and explaining bad faith prosecutions are brought without an intention of obtaining a conviction or for

harassment).  Moreover, although Plaintiff claims irreparable harm because there is not proof a grand jury existed to validly issue his indictment and he suffers from anxiety stemming from the pending charges, he has no viable allegation of irreparable injury.  See Younger, 401 U.S. at 53-54 (finding irreparable injury if statute of prosecution is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it" or other unusual circumstances require equitable relief).  Indeed, Plaintiff provides no evidence, only conjecture, to support his allegation the 2018 indictment was not properly returned by a duly empaneled grand jury.  Moreover, the mental stress and anxiety of pending charges are routinely associated with detention and pending charges, and Plaintiff acknowledges he is receiving treatment for his mental condition.

Finally, Plaintiff's ongoing state prosecution, wherein he is represented by the Public Defender's Office, provides an adequate state forum where any constitutional issues can be raised.  Therefore, the Court should abstain from reaching the merits of any claims concerning his ongoing state prosecution.

### 3.     The Detention Center Is Not Subject to Liability in a § 1983 Suit

Even if Plaintiff were not seeking habeas corpus relief, he fails to state a claim against the Detention Center because county jails are not subject to liability under § 1983.  See, e.g., Smith v. Chatham Cnty. Sheriff's Dep't, No. CV 412-224, 2012 WL 5463898, at *2 (S.D. Ga. Oct. 22, 2012) ("[T]he [county jail] is not a legal entity capable of being sued."), adopted by 2012 WL 5463762 (S.D. Ga. Nov. 8, 2012); Sebastian v. Maynard, No. 5:10-CV-221, 2010 WL 3395040, at *2 (M.D. Ga. July 12, 2010) ("The Lamar County Detention Center is

10

not a legal entity that is subject to suit under 42 U.S.C. § 1983."), *adopted by* 2010 WL 3395154 (M.D. Ga. Aug. 21, 2010); Bolden v. Gwinnett Cnty. Det. Ctr. Med. Admin. Med. Doctors & Staff, No. 1:09-CV-1966, 2009 WL 2496655, at *1 (N.D. Ga. Aug. 12, 2009) ("Jails, like the Gwinnett County Detention Center, are not legal entities subject to suit under § 1983 at all."). Appropriate parties for suit under § 1983 include "persons" who participated in the alleged violation. See 42 U.S.C. § 1983; see also Georgia Insurers Insolvency Pool v. Elbert County, 368 S.E.2d 500, 502 (Ga. 1988) (limiting § 1983 liability to "(1) natural persons; (2) an artificial person (a corporation); and (3) such quasi-artificial persons as the law recognizes as being capable to sue") (quotations omitted).

Thus, Plaintiff fails to state a claim upon which relief can be granted against the Detention Center.

### 4.   All Official Capacity Claims against Sheriff Roundtree Are Barred

Plaintiff states he is suing Sheriff Roundtree in his official and individual capacities. When an "arm of the State" is sued, the Eleventh Amendment "bars suits brought in federal court." Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003) (*en banc*) (citation omitted). Georgia sheriffs act as arms of the state, and as previously explained by Chief United States District Judge J. Randal Hall, when performing official and authorized duties such as engaging in general law enforcement function or making an arrest under state-law, a sheriff such as Defendant Roundtree is entitled to Eleventh Amendment immunity in a § 1983 suit requesting money or other retrospective relief sought against him in his official capacity. Frederick v. Brown, No. 113-176, 2015 WL 4756765, at *14 (S.D. Ga. Aug. 10, 2015) (collecting cases). Thus, even if Plaintiff were truly seeking relief under § 1983 rather than

an impermissible request for habeas corpus relief, all claims against Sheriff Roundtree in his official capacity are subject to dismissal.[4]

### 5.     Liability May Not Be Imposed Simply By Virtue of Supervisory Position

Any potential § 1983 individual capacity claims against Sheriff Roundtree and all claims against Warden Samuels are also subject to dismissal for failure to state a claim because Plaintiff may not hold these two individuals liable merely by virtue of their supervisory positions.   "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Rosa v. Fla. Dep't of Corr., 522 F. App'x 710, 714 (11th Cir. 2013) (*per curiam*).   Likewise, supervisors and employers cannot be sued under § 1983 simply on a theory of *respondeat superior*.  See Kruger v. Jenne, 164 F. Supp.2d 1330, 1333-34 (S.D. Fla. 2000) (citing Powell v. Shopco Laurel, Co., 678 F.2d 504 (4th Cir. 1982)) (explaining that employer which provided medical care for state inmates could not be sued under § 1983 on *respondeat superior* theory).

"Because vicarious liability is inapplicable to § 1983 actions, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has

---

[4]The amended complaint does not allege Defendant Samuels serves as an employee of Sheriff Roundtree in his capacity as Warden of the Detention Center.  As discussed in the next section, Plaintiff is improperly attempting to hold Warden Samuels liable based on his supervisory position. Notably, deputy sheriffs, as employees of a Georgia sheriff, have been afforded Eleventh Amendment immunity in this District for official capacity claims based on actions taken while in the employ of the sheriff.  See Townsend v. Coffee Cnty., Ga., 854 F. Supp. 2d 1345, 1352 (S.D. Ga. 2011).

violated the Constitution." Rosa, 522 F. App'x at 714 (quoting Iqbal, 556 U.S. at 676) (internal quotations omitted).  Therefore, to hold Sheriff Roundtree, in his individual capacity, or Warden Samuels liable, Plaintiff must demonstrate that they (1) actually participated in the alleged constitutional violation, or (2) there is a causal connection between the individual's actions and the alleged constitutional violation.  See Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)).  Here, Plaintiff appears to name these two individuals as Defendants not because of their direct involvement in the events about which he complains, but by virtue of their supervisory positions.  For example, as to Defendant Samuels, Plaintiff states he "is being illegally detained and deprived of his rights at the facility [[at] which Charles Samuels is Warden." (Doc. no. 5, p. 4.)  He also states Defendant Rountree "is the Sheriff of this said county and his office and officials has engaged in wrongful or illegal actions or omissions." (Id. at 7.)

Nowhere does Plaintiff allege these two Defendants were present for, or participated in, an alleged constitutional violation.  At best, Plaintiff alleges Sheriff Roundtree has showed a lack of service on previous claims, petitions, or lawsuits against his office or officials.  (Id. at 4.)  This Court never directed service of Plaintiff's prior § 2241 petitions such that any response was required, and as the Attachments show, an answer was filed on behalf of Sheriff Roundtree in the pending state habeas case.  As to Defendant Samuels, Plaintiff alleges he is the Warden of the facility from which Plaintiff believes he should be immediately released.

Nor can Plaintiff establish liability by alleging either Defendant ruled on a grievance. See Asad v. Crosby, 158 F. App'x 166, 170-72 (11th Cir. 2005) (per curiam) (affirming

13

district court's dismissal of supervisory liability claims against two defendants who failed, *inter alia*, "to afford [plaintiff] relief during the grievance process," because the record failed to show that they "personally participated in the alleged constitutional violations, or that there was a causal connection between the supervisory defendants' actions and an alleged constitutional violation"); see also Blackerby v. McNeil, No. CV 307-071, 2008 WL 2047814, at *1-2 (S.D. Ga. May 13, 2008) (dismissing claim against prison official who allegedly failed to act in accordance with the plaintiff's wishes concerning information in a grievance and a letter); Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (refusing to impose liability under § 1983 on supervisory officials who denied administrative grievances and otherwise failed to act based on allegations contained in the grievances), *cert. denied*, 530 U.S. 1264 (2000); Crowder v. Lash, 687 F.2d 996, 1005-06 (7th Cir. 1982) (rejecting claim that Commissioner of Department of Corrections could be held liable for damages from any constitutional violation at a facility within his jurisdiction based on receipt of a letter describing allegedly improper prison conditions).

Nor has Plaintiff alleged the requisite causal connection between either Defendant and the asserted constitutional violation. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)).

14

The standard for demonstrating "widespread abuse" is high.   In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).   A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

Plaintiff does not draw the necessary causal connection to any alleged constitutional violation.   Plaintiff has not alleged (1) a history of widespread abuse regarding detention on a probation warrant or regarding pretrial detention after indictment but before trial, (2) an improper custom or policy put in place by either Defendant regarding the same, or (3) an inference either Defendant directed others to act, or knew they would act, unlawfully.   At best, Plaintiff has alleged he used the grievance procedure, (doc. no. 5, pp. 14-15), and his grievances were denied.   A prison grievance procedure does not provide a constitutionally protected interest, Bingham v. Thomas, 654 F.3d 1171, 1177-78 (11th Cir. 2011), and as explained above, supervisory liability cannot be imposed based on a grievance ruling.   Thus, neither Defendant can be held liable based on the manner in which he addressed Plaintiff's grievance.   In sum, Plaintiff has not shown Sheriff Roundtree or Warden Samuels actually participated in the alleged constitutional violation; nor has he drawn the necessary causal connection to any alleged constitutional violation.   Therefore, Plaintiff fails to state a claim upon which relief can be granted against Defendant Samuels or against Sheriff Roundtree in

his individual capacity, and all claims against both of these two Defendants are subject to dismissal.

## II.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Plaintiff's amended complaint be **DISMISSED** for failure to state a claim upon which relief may be granted and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 28th day of January, 2021, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

16